**Michael KENNEDY and Eleanore Kennedy, Plaintiffs,**

v.

**The UNITED STATES of America; Brigadier General Paul F. Kavanaugh, Army Corps of Engineers, North Atlantic Division; Henry G. Williams, Commissioner of the New York State Department of Environmental Conservation; the County of Suffolk, New York; the Town of East Hampton, New York; Larry Penny, Director of Natural Resources, Town of East Hampton, and the Village of East Hampton, New York, Defendants.**

No. CV 85-0581.

United States District Court, E.D. New York.

Sept. 19, 1986.

1074

Leon Friedman, New York City, for plaintiffs.

Alio & Beesecker by John J. McDonough, New York City, for defendant Village of East Hampton.

Andrew J. Maloney, U.S. Atty. by Janice Siegel, Asst. U.S. Atty., Brooklyn, N.Y., for defendants U.S. and Kavanaugh.

Martin Bradley Ashare, Suffolk Co. Atty. by Garrett Swenson, Jr., Hauppauge, N.Y., for defendant Suffolk County.

Robert Abrams, New York State Atty. Gen. by Leslie Allan and Stuart Miller, New York City, for defendant Williams.

Mulholland, Minion & Roe, Williston Park, N.Y., for defendant Town of East Hampton.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

## I. INTRODUCTION AND FACTS

Plaintiffs Michael and Eleanore Kennedy are residents of the State of New York

who own a parcel of land located between Beach Lane and Georgica Pond in East Hampton, New York. Plaintiffs allege that the construction of a number of stone groins, or jetties, on the Atlantic Ocean shoreline to the east of their property has blocked the normal replenishment of sand on the property and, as a result, has caused a constant, swift loss of beachfront and protective dunes and dangerous encroachment of the Atlantic. In an attempt to prevent further erosion of their property, and obtain damages for loss that has already occurred, plaintiffs have brought this action against the United States of America ("United States" or "federal government"); Brigadier General Paul F. Kavanaugh, Division Engineer of the United States Army Corps of Engineers, North Atlantic Division ("Kavanaugh"); Henry G. Williams, Commissioner of the New York State Department of Environmental Conservation ("State Commissioner"); the County of Suffolk, New York ("Suffolk" or "County"); the Town of East Hampton, New York ("Town"); the Village of East Hampton, New York ("Village"); and Larry Penny, Director of Natural Resources in the Town of East Hampton ("Penny").

Plaintiffs' Complaint contains nine counts. Plaintiffs' "First Claim," which is brought against all defendants, alleges that the construction and supervision of the groins were performed "negligently and in reckless disregard of the duty of reasonable care owed plaintiffs, in that defendants constructed the groins with knowledge that they would damage plaintiffs," by blocking and disrupting the natural east-to-west flow of water and sand along the coast. The Second and Third Claims, also brought against all defendants, allege continuing nuisance and continuing trespass, respectively, as a result of the improper construction and maintenance of the groins. Plaintiffs' Fourth Claim alleges that the actions of the United States and the State Commissioner have rendered parts of the Kennedy's property unusable and therefore constitute "takings" for which plaintiffs are entitled to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution. The Fifth Claim asserts that actions of Suffolk, the Town, and the Village similarly constitute takings under Article I of the New York State Constitution.

Plaintiffs contend in their Sixth Claim that the acts and omissions of Suffolk, the Town, and the Village have altered the natural flow, quantity, quality, and condition of a watercourse in violation of § 15–0701 of the New York Environmental Law. Plaintiffs' Seventh Claim states that, on June 25, 1984, after having obtained the appropriate permit, the Kennedys hired a bulldozer to push up sand from the beach in front of their house in order to create a protective dune. Plaintiffs allege that the Town, through its agent Penny, "illegally, recklessly and without justification" ordered them to stop work, with the result that the property was left more vulnerable to damage. The Kennedy's Eighth Claim alleges that the United States failed to comply with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.*, and the Environmental Quality Improvement Act of 1970, 42 U.S.C. § 4371 *et seq.*, while their Ninth Claim purports to state a claim against the United States for violation of the Administrative Procedure Act, 5 U.S.C. §§ 551–76, 701–06. Plaintiffs seek as relief an order enjoining defendants from refusing to remove or submerge the groins so as to prevent further harm to the property, and damages in the amount of ten million dollars against the United States, Suffolk, and the Town.

The Court must now consider a number of motions filed by various of the defendants.

## II. STATE COMMISSIONER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

The State Commissioner has moved to dismiss plaintiffs' claims against him on a variety of grounds. The Court originally granted the State Commissioner's motion, holding that plaintiffs' claims against him

were barred by the Eleventh Amendment to the United States Constitution, but thereafter informed the parties that it would reconsider its ruling and invited them to submit additional papers. Upon reconsideration, the Court holds that the motion should indeed be granted, albeit for reasons different from those originally relied upon by the Court.

The Eleventh Amendment reads, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The United States Supreme Court has interpreted the language of the Amendment as barring not only suits brought against a state by citizens of other states, but also suits brought by a state's own citizens. *E.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). When an action is brought against a state official, rather than against the state in its own name, the question arises as to whether the Eleventh Amendment prohibition applies. In confronting this issue, the Supreme Court has made a basic distinction between suits for prospective injunctive relief, which the Court has held are not barred by the amendment, *see, e.g., Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and suits for monetary awards out of state funds, which are barred, *see, e.g., Edelman,* 415 U.S. 651, 94 S.Ct. 1347.

Unfortunately, the line between permissible and impermissible relief under the Eleventh Amendment is not always crystal clear, as the issuance of a prospective injunction may often place a state in a position where a corresponding expenditure of state funds will be necessary to carry out the court's mandate. The Supreme Court has held that, in such situations, the Eleventh Amendment does not act as a bar where any expenditure of state funds would be merely ancillary to compliance with the requested prospective injunction. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

■ Applying these principles to the case at bar, the Court concludes that the Eleventh Amendment does not require dismissal of plaintiffs' action against the State Commissioner. Plaintiffs do not seek any award of damages against the State Commissioner, but only an injunction that will require the removal or submerging of the groins allegedly causing harm to plaintiffs' property. While the granting of the requested injunction might very well require some expenditure of monies from the state treasury, any such costs would unquestionably be ancillary to the Court's ordering of injunctive relief necessary to bring state actors into compliance with the dictates of constitutional law. As the Supreme Court made clear in *Milliken,* the Eleventh Amendment does not prevent federal courts from enjoining state officials to conform their conduct to the requirements of federal law, notwithstanding even a direct and substantial impact on the state treasury. 433 U.S. at 289, 97 S.Ct. at 2762. To quote another Supreme Court decision handed down less than one year ago, "Both prospective and retroactive relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour,* —— U.S. ——, ——, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

■ Nonetheless, plaintiffs' claims against the State Commissioner ultimately run afoul of the combined effect of another aspect of Eleventh Amendment jurisprudence and principles regarding the forms of relief available under the "takings"

clause of the Fifth Amendment as made applicable to states through the Fourteenth Amendment. Plaintiffs have sued the State Commissioner for alleged violations of both the federal constitution and state common law. The Supreme Court has held, however, the prospective injunctive relief exception to the bar of the Eleventh Amendment applies only where violations of federal law have been alleged. This exception is designed, as the quotation from *Green* makes clear, to help assure the supremacy of federal law. Where allegations of conduct violative not of federal but of state law underly a plaintiff's claim, the rationale for the prospective injunction/monetary award distinction has no bearing. Thus, the Eleventh Amendment prevents a federal court from granting relief against state officials on the basis of state law, be the requested relief prospective or retroactive, injunctive or monetary in nature. Furthermore, the power of federal courts to adjudicate such state law claims against state officials is equally lacking whether the claimed basis for jurisdiction is said to lie in federal question jurisdiction, diversity jurisdiction, or the doctrines of pendent or ancillary jurisdiction. *County of Oneida, New York v. Oneida Indian Nation of New York State*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This Court, therefore, does not have jurisdiction to hear those of the Kennedy's claims that are based upon alleged state law violations by the State Commissioner.

■ Plaintiffs' First, Second, Third, and Fourth Claims each contain allegations that include the State Commissioner within their ambit, but the only claim not based upon the common law is the Fourth Claim, which contends that the Kennedy's property was unconstitutionally "taken" without just compensation. This taking claim, however, also must fall, as plaintiffs seek relief to which they are not entitled, *i.e.*, an injunction is not an available remedy for a taking claim such as that asserted by the Kennedys. Plaintiffs' Complaint in no way alleges that the State Commissioner's purported exercise of the power of eminent domain was not authorized by state or federal law, not for a public use, or otherwise improper. Rather, the Complaint apparently attempts to state a claim that the state, acting through its agent the State Commissioner, has "taken" part of plaintiffs' property but failed to compensate plaintiffs for this assertion of its right of eminent domain. It is settled law that absent an allegation that a taking itself is unlawful, as opposed to an assertion merely that the required compensation has not been paid, a action for injunctive relief cannot stand. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1522–23 (D.D.C.1984) (en banc), *vacated and remanded on other grounds*, — U.S. ——, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985); *Buffalo River Conservation and Recreation Council v. National Park Service*, 558 F.2d 1342, 1344 (8th Cir.1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978).[1] Accordingly, the Court cannot grant the relief plaintiffs seek as a remedy for the State Commissioner's purported violation of their constitutional right to just compensation for a "taking" of their property.

The State Commissioner's motion to dismiss plaintiffs' claims against him must therefore be granted. While the Eleventh Amendment does not bar the injunctive relief sought, it does bar all but plaintiffs' taking claim. This remaining constitution-

---

1. *Cuyahoga-River Power Co. v. City of Akron*, 240 U.S. 462, 36 S.Ct. 402, 60 L.Ed. 743 (1916), cited by plaintiffs in their papers, is not to the contrary, as Justice Holmes' opinion in that case merely concerned itself with a question of subject matter jurisdiction. Additionally, *Knight v. State of New York*, 443 F.2d 415 (2d Cir.1971), discussed by the parties in connection with an-

other ground of the State Commissioner's motion, but arguably relevant to the issue of the availability of an injunction, merely notes that an injunction may be available where the claim is that a taking is not for public use and therefore unconstitutional. 443 F.2d at 419. Plaintiffs have made no such contention in the case now before the Court.

al claim, in turn, must itself be dismissed, as plaintiffs seek relief that the Court could not award even if it were ultimately to find plaintiffs' allegation of an uncompensated exercise of eminent domain to be meritorious. This Court, quite simply, is not the proper forum for the Kennedy's dispute with the State Commissioner.[2]

### III. STATE COMMISSIONER'S MOTION TO DISMISS CROSS–CLAIMS

■ In their respective Answers to plaintiffs' Complaint, Suffolk, the Town, and the Village assert cross-claims for indemnification and contribution against each of their co-defendants, including the State Commissioner. The State Commissioner has moved to dismiss the cross-claims asserted against him.

The State Commissioner's motion must be granted. The political subdivisions which have asserted cross-claims are citizens of New York State for Eleventh Amendment purposes. *County of Monroe v. State of Florida*, 678 F.2d 1124 (2d Cir. 1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983); *Byram River v. Village of Port Chester, New York*, 394

**2.** Since the Court has concluded that the State Commissioner's motion to dismiss must be granted for the reasons discussed above, there is no need to consider the merits of the other grounds for dismissal presented to the Court by the State Commissioner.

**3.** It may very well be that these cross-claims are also barred by the Eleventh Amendment as state law claims asserted against a state official. *See supra* § II. The Court finds rather unconvincing Suffolk's argument that the River and Harbor Act of 1960, Pub.L. No. 86–645, § 101, 74 Stat. 480, 483 (1960), and the resolutions and reports relevant to the project under which some of the groins were apparently built indicate an intent to provide state subdivisions with a federal cause of action for damages against the state. Nonetheless, the Court need not definitively resolve this issue, as the cross-claims are barred by the Eleventh Amendment regardless of whether they are rooted in state or federal law.

Additionally, the Court notes that it has given careful consideration to the arguments of Suffolk and the Village that the state had waived its sovereign immunity and thus is subject to suit

F.Supp. 618 (S.D.N.Y.1975). The cross-claims that they have set forth seek to recover monetary awards out of state funds and are thus barred by this Amendment. *E.g.*, *Edelman*, 415 U.S. 651, 94 S.Ct. 1347; *see supra* § II. Accordingly, the cross-claims of Suffolk, the Town, and the Village against the State Commissioner are hereby dismissed.[3]

### IV. UNITED STATES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

■ The United States has moved to dismiss plaintiffs' claims against it as deficient in a number of respects. First, the United States points out that, under the Tucker Act, the United States Court of Claims has exclusive jurisdiction to hear claims founded upon the United States Constitution for claims exceeding ten thousand dollars. 28 U.S.C. § 1346(a)(2); *Crawford v. Cushman*, 531 F.2d 1114, 1126 n. 17 (2d Cir.1976). Plaintiffs' Fourth Claim, which sets forth against the United States an allegation of an uncompensated taking in violation of the Fifth Amendment must therefore be dismissed.[4] The United States

despite the normally preclusive effect of the Eleventh Amendment on claims such as those asserted by Suffolk and the Village. The Court finds that there has been no unequivocal expression of any intent that the state's sovereign immunity would be abrogated or waived by participating in the project to build the groins. The necessary indicia of an abrogation or waiver of Eleventh Amendment immunity held to be required by the Supreme Court are absent in the circumstances surrounding the events that ultimately led to the present litigation. *See, e.g., Atascadero State Hospital v. Scanlon*, — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *County of Oneida*, 470 U.S. 226, 105 S.Ct. 1245.

**4.** Although plaintiffs' Fourth Claim does not explicitly state the amount of any damages sought or even the nature of the relief sought, the Complaint's prayer for relief seeks ten million dollars in damages against the United States. Accordingly, taken as a whole, the Complaint most reasonably should be read to state a claim for damages in excess of ten thousand dollars as a result of an uncompensated taking. Furthermore, as discussed above, *see supra* § II, injunctive relief is not available to plaintiffs as a remedy for their taking claim.

further argues that this lack of jurisdiction extends not only to the Complaint's Fourth Claim, but the First, Second, and Third Claims as well. The United States' basic contention appears to be that these three claims, although stated in terms of tort, are more in kin with taking claims than with negligence, nuisance, and trespass. As plaintiffs point out in their papers opposing the federal government's motion, however, plaintiffs must be considered the master of their own complaints, and it is plaintiffs' prerogative to determine the theories of their actions. The structuring of plaintiffs' first three claims is not so unreasonable or non-viable as to justify the Court's acceptance of the United States' reinterpretation, nor do the plaintiffs' claims sounding in tort in any way indicate that their framing was fraudulently or manipulatively designed as a means of obtaining jurisdiction in this Court.

■ Second, the United States contends that, even if plaintiffs' First, Second, and Third Claims are to be considered tort claims, they are barred by the applicable statute of limitations. 28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The United States asserts that any cause of action first accrued no later than some time in 1976, when the Kennedys purchased the property in East Hampton. Therefore, the federal government argues, plaintiffs' failure to plead that they presented a claim to the United States Army Corps of Engineers by 1978 renders their tort causes of action time-barred.

The United States' contention is undermined by the Second Circuit's decision in *Rapf v. Suffolk County of New York,* 755 F.2d 282 (2d Cir.1985). The situation presented in *Rapf* is almost directly parallel to that now before this Court. The *Rapf* plaintiffs were individual homeowners of oceanfront property in Southampton, New York who brought an action on behalf of themselves and a class of over two hundred of their neighbors seeking injunctive relief against Suffolk preventing continued alleged harm caused by a series of groins constructed offshore near their properties. The plaintiffs asserted five grounds for relief, namely, negligent construction, improper design and maintenance constituting a continuing nuisance, a taking in violation of the Fifth and Fourteenth Amendments, a taking in violation of the New York State Constitution, and actions taken in violation of Suffolk's own Charter. The homeowners sought an injunction requiring, *inter alia,* the construction of additional groins, or in the alternative, the removal of the existing groins. Additionally, the plaintiffs sought damages in the amount of seventy million dollars.

The Second Circuit explicitly rejected Suffolk's position that the statute of limitations barred the *Rapf* plaintiffs' suit, holding that the plaintiffs had stated a claim for a continuing tort "for which the cause of action accrues anew each day." 755 F.2d at 290. Similarly, the statute of limitations does not act as a bar to the tort claims asserted in the instant case, which is nearly identical in all relevant respects to *Rapf.*[5]

The United States' third ground for its motion to dismiss is its contention that plaintiffs have no legal right to continued unobstructed littoral drift that will bring new sand to their property's shoreline to replace sand lost through the processes of

---

5. The United States has also asserted that plaintiffs' taking claim runs afoul of 28 U.S.C. § 2401(a), which states, in pertinent part, "....[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The logic of *Rapf* applies equally to this constitutional claim. As the Court held above, however, plaintiffs' Fourth Claim must nonetheless be dismissed for lack of subject matter jurisdiction.

erosion. The federal government bases its argument upon the United States Court of Claims' decision in *Pitman v. United States*, 457 F.2d 975, 198 Ct.Cl. 82 (1972). The plaintiff in *Pitman* brought suit to recover just compensation for an alleged taking of his beachfront property in Brevard County, Florida. Pitman alleged that he had sustained harm to his property as a result of the construction and operation of the Canaveral Harbor Project, which was designed to provide a deepwater harbor on the east coast of Florida. The project consists of a turning basin enclosed by a dike, an entrance canal protected at its seaward entrance by two jetties, and an approximately six mile long barge canal that extends from the turning basin to the Intracoastal Waterway. The essence of plaintiff's claim was that the project had interrupted southerly littoral drift and thereby caused the loss of about four acres of his property.

The Court of Claims held that, under these circumstances, the damages suffered by Pitman did not constitute a taking compensable under the Fifth Amendment. The court noted that the United States had a paramount interest, rooted in the Commerce Clause of the United States Constitution, in the improvement of navigation on navigable waters. The court further observed that Pitman could not prove that the building of the project had raised the level of the Atlantic Ocean above the high-water mark and that it was established that the Corps of Engineers had made no entry upon the plaintiff's land during the course of the construction or maintenance of the project. The court ruled that, given the facts presented by *Pitman*, the interruption of the littoral drift and resulting erosion of plaintiff's land, even if reasonably foreseeable at or prior to the time work began on the project, was not a direct invasion or appropriation for which plaintiff was entitled to just compensation.

*Pitman* is distinguishable from the situation presented by the Kennedy's lawsuit in two important respects. First, the Court of Claims' decision in *Pitman* rested in large degree upon the United States' constitutional interest in the improvement of navigation. The Canaveral Harbor Project at issue in *Pitman* was expressly designed to provide for better navigation on Florida's east coast. The groins in dispute in the instant controversy, by contrast, were built for the precise purpose of preventing erosion, a goal, according to plaintiffs, which has been achieved, if at all, only with rather devastating consequences for specific property owners. Second, *Pitman* held only that erosion caused by interruption of the natural course of littoral drift does not state a claim for a uncompensated taking under the Fifth Amendment. This by no means necessarily implies that tort claims grounded upon allegations of improper construction and maintenance of a governmental project resulting in harm to particular owners' property are likewise barred. The Court holds that the reasoning underlying *Pitman* does not support dismissal at this time of plaintiffs' common-law claims.[6]

Plaintiffs' First, Second, and Third Claims, insofar as they assert tort claims against the federal government, must necessarily be based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, which provides for a limited waiver of the United States' sovereign immunity. The fourth ground of the United States' motion to dismiss relies upon a purportedly applicable exception to the federal government's waiver of tort liability. 28 U.S.C. § 2680 reads:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or

---

6. As the Court has already dismissed plaintiffs' taking claim, it of course need not determine whether the logic of *Pitman* would provide an additional basis for the dismissal of plaintiffs' Fourth Claim.

regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

. . . . .

The United States argues that plaintiffs' claims, to the extent they are brought under the FTCA, fall within the "discretionary function or duty" exception to the federal government's subjection to liability. The Court has examined the pleadings filed in the case and fails to see a basis within these papers for granting of the United States' motion on this ground. Accordingly, the Court concludes that the granting of a motion to dismiss on the strength of § 2680's "discretionary function or duty" exception would be improper. This Court has also examined the additional papers and documents supplied to the Court, but finds the information they contain also to be less than definitive on the issue. Thus, while the Court has considered the propriety of granting the federal government's request that the Court treat its motion to dismiss as a motion for summary judgment in certain respects, *see* Fed.R.Civ.P. 12(b), 56, the Court concludes in its discretion that to do so would be highly inappropriate. Almost no discovery appears to have been undertaken, further facts relevant to the question could undoubtedly be presented to the Court, and the parties have not briefed the issue as fully as they might wish to on a full-fledged summary judgment motion. In sum, the record is not sufficiently developed at this stage in the litigation for the Court to make an ultimate determination as to the applicability of the exception asserted as a defense by the United States. *See In re "Agent Orange" Product Liability Litigation,* 580 F.Supp. 1242, 1255 (E.D.N.Y.1984).

■ The United States also argues, as a fifth ground for their motion, that an additional exception to liability under the FTCA bars the Kennedy's tort claims. 33 U.S.C. § 702 provides, in pertinent part, " ...

[N]o liability of any kind shall attach to or rest upon the United States for any damage from or by flood or flood waters at any place." The United States contends that it is immune from liability to the Kennedys since the statute under which the groins were built authorized flood control projects, a survey report regarding beach erosion also contained a hurricane study regarding protection against tidal flooding, and groins can aid in reducing flood damage from storms.

The United States' position borders on frivolity. Plaintiffs have made no allegations even remotely concerned with flooding. The purposes underlying the construction of the groins are, at best, only tangentially related to flood control. The alleged improper construction and maintenance of the groins that give rise to plaintiffs' tort claims are not acts and omissions related to flood control purposes. Accordingly, 33 U.S.C. § 702 does not provide support for the United States' motion to dismiss.

Plaintiffs' Eighth Claim alleges that "the United States and its agents failed to give adequate consideration to the consequences of their actions and to consider the impact of their continued failure to take any steps to remedy the situation, in violation of the mandates of the National Environmental Policy Act of 1969 ["NEPA"], 42 U.S.C. § 4321 et seq., and the Environmental Quality Improvement Act of 1970 ["EQIA"], 42 U.S.C. § 4371 et seq." The United States asserts, as a sixth ground for its motion to dismiss, that plaintiffs fail to state a claim under these statutes since (a) the decision to construct the groins and the actual construction of the groins all took place before the statutes became effective, and (b) there is no private right of action under EQIA.

■ Plaintiffs, unfortunately, have not seen fit to respond in their papers to the federal government's argument. Nonetheless, the Court takes it upon itself to consider the merits of the United States' position rather than merely deeming the points conceded. As to the applicability of

the statutes, the United States has misconstrued the nature of plaintiffs' Eighth Claim as set forth in their Complaint. Plaintiffs' claim under the two cited environmental laws is based not solely on purported improprieties in the design and construction of the groins, but also on the federal government's alleged *continued* failure to take steps to alleviate or correct the harm it supposedly caused. Thus, while the design and construction may predate the passage of NEPA and EQIA, plaintiffs' claim under these statutes is not necessarily completely void. While it remains to be seen whether plaintiffs can ultimately prove facts sufficient to obtain the relief they seek on their Eighth Claim, the timing of the building of the groins in relation to the passage of the two acts does not warrant dismissal of the claim.

■ Turning to the question of the existence of a private cause of action under EQIA, the Court concludes that, while the answer to this question is far from clear, dismissal of plaintiff's EQIA claim at this juncture would not be appropriate. § 202(c) of EQIA declares the purposes of the statute to be:

 (1) to assure that each Federal department and agency conducting or supporting public works activities which affect the environment shall implement the policies established under existing law; and

 (2) to authorize an Office of Environmental Quality, which, notwithstanding any other provision of law, shall provide the professional and administrative staff for the Council on Environmental Quality....

The first of these declared purposes is surely not inconsistent with a private right of action under the statute. Furthermore, while there is almost no case law construing EQIA, the court in *Concerned Citizens for the 442nd T.A.W. v. Bodycombe*, 538 F.Supp. 184 (W.D.Mo.1982), although failing to analyze the issue and ultimately ruling that there had been no violation of EQIA in the situation presented, apparently allowed a private action brought in part under EQIA to go forward until the court's

ultimate resolution on the merits. Given the language of the statute and the existence of at least one case seemingly allowing a private suit under EQIA, plus the fact that the parties have not presented the Court with any analysis of the intent of Congress in enacting the statute or the legislative history behind the act, the Court will allow plaintiffs to proceed at this time with their EQIA claim.

■ Finally, the United States seeks the dismissal of plaintiffs' Complaint to the extent that it purports to state a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–76, 701–06. The United States notes that the APA is not an independent source of subject matter jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *Chu v. Schweiker*, 690 F.2d 330, 333 n. 3 (2d Cir.1982), and asserts that plaintiffs' claim under the APA, *i.e.*, the Ninth Claim of the Complaint, must be dismissed since plaintiffs have failed to assert a jurisdictional foundation for this claim.

Plaintiffs respond to the federal government's argument by declaring that the necessary jurisdiction is provided by the presence of a constitutional claim against Kavanaugh under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and federal question jurisdiction under 28 U.S.C. § 1331, and cites the Third Circuit decision of *Hahn v. United States*, 757 F.2d 581 (3d Cir.1985) for the proposition that Fifth Amendment-based claims such as *Bivens* actions are within the jurisdictional grant of § 1331 and the APA provides a corresponding waiver of sovereign immunity. Plaintiffs set forth as an additional foundation for such jurisdiction a supposed constitutionally protected property interest in the "legitimate expectations" of "entitlement" created by the arrangements between the various federal, state, and county governmental entities that cooperated in building the groins.

The Court need not determine whether, as an abstract matter of law, plaintiffs might properly have interposed *Bivens* and other constitutionally based claims as foundations for their lawsuit because, while plaintiffs may put forth such claims in opposition to the United States' motion to dismiss, the only constitutional claim actually contained in the Kennedy's Complaint is their Fourth Claim's allegation of a taking without just compensation. The Court has carefully examined the Complaint but cannot help but conclude that plaintiffs' arguments regarding *Bivens* and other property interests are post hoc attempts, unsupported by the Complaint, to defend themselves against the United States' position. Plaintiffs' Complaint must therefore be dismissed insofar as it attempts to state a claim under the APA.

Accordingly, the United States' motion to dismiss is granted to the extent that plaintiff's Fourth and Ninth Claims are hereby dismissed. The United States' motion is otherwise denied.

## V. SUFFOLK'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Suffolk has moved to dismiss the Kennedy's claims against it. Many of the grounds the County relies upon for its motion parallel those put forth by the United States and have been adequately discussed above. The Court, therefore, will address only those aspects of Suffolk's motion that present issues not previously addressed in this opinion and are necessary to the Court's decision.

Suffolk argues that plaintiffs have not asserted any federal causes of action against the County and thereby are relying solely upon the Court's power of pendent party jurisdiction to keep their case against Suffolk in federal court. Suffolk further argues that the exercise of pendent party jurisdiction is not appropriate under the circumstances presented by this case. Plaintiffs respond that they have indeed stated a federally-based claim against the County, namely, a claim under 42 U.S.C. § 1983, and, in any event, the exercise of

pendent party jurisdiction would be entirely proper.

The Court's remarks concerning plaintiffs' contention that they have stated a *Bivens* claim and a claim of deprivation by the United States of a constitutionally protected property interest are equally applicable here. Nowhere in plaintiffs' Complaint is there any allegation of a claim under § 1983 and 28 U.S.C. § 1343, the corresponding jurisdictional provision. Nor, even accepting plaintiff's position this was merely an error (presumably typographical), can the substantive allegations contained in the various claims set forth in the Complaint reasonably be interpreted as establishing any constitutional or otherwise federally-based claims against the County. Accordingly, plaintiffs' action against Suffolk must rise or fall solely based upon the doctrine of pendent party jurisdiction.

Two Supreme Court cases must guide this Court in determining whether it should exercise jurisdiction over Suffolk. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), ruled that a federal court possesses the power to exercise pendent jurisdiction where the federal and state claims presented by a lawsuit "derive from a common nucleus of operative fact." 383 U.S. at 725, 86 S.Ct. at 1138. *Gibbs* further held that the mere existence of this power in a given case by no means requires that the court actually exercise it, since pendent jurisdiction is a doctrine of discretion, not of plaintiffs' rights. The justification for such jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139.

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Su-

preme Court confronted the specific problem of pendent party jurisdiction. While explicitly limiting its holding to the issue of pendent party jurisdiction where a claim has been brought against some but not all the defendants for alleged violations of § 1983, the Court made clear the tricky ground upon which such jurisdiction over parties not otherwise subject to a federal court's power lies:

> It is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claims a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." [*Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138]. True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding...." *Ibid.* But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

427 U.S. 14–15, 96 S.Ct. at 2420. The Court also noted that, in determining the propriety of pendent party jurisdiction, the nature and language of specific statutes upon which a case's federal claims are based is relevant to the ultimate resolution of the jurisdictional question.

 Turning to the situation presented by the instant case, the Court finds that the federal claims against the United States and the state law claims against Suffolk derive from a common nucleus of operative fact concerning the construction and maintenance of the groins that have led to this litigation. The Court therefore possesses the power to exercise pendent jurisdiction over Suffolk despite an otherwise lack of subject matter jurisdiction. Nonetheless, the Court concludes in its discretion that the exercise of this power would be inappropriate in the case at bar.

A party subject to a federal court's power only because a plaintiff's claim against it so closely relates to the federal claims against a separate party is by definition a party whose placement within the wide circle of parties covered by federal jurisdiction is somewhat peripheral. Accordingly, a court should be more wary of exercising its power over such a party than over the usual multitudinous categories of litigants. While federal courts obviously possess the power to adjudicate a broad range of disputes, including many disputes grounded in the laws of the various states, there are certain classes of controversies involving certain parties that are better left to the judgment of state court systems.

This lawsuit presents just such a dispute insofar as the Kennedys seek to press their claims against Suffolk. Plaintiffs' allegations against the County sound solely in state law and plaintiffs are only able to provide this Court with any kind of subject matter jurisdiction over Suffolk because they have sufficiently stated federal claims against an entirely separate governmental entity. Plaintiffs' claims of negligence, nuisance, and trespass, and violations of the New York State Constitution and a specific provision of the New York Environmental Conservation Law are causes of action the resolution of which is far better placed in the hands of the New York State courts than in a federal court.

Furthermore, the considerations of judicial economy, convenience, and fairness to litigants that underlie the very doctrine of pendent jurisdiction do not support its exercise in the instant case. The doctrine is premised on the idea that where a federal court has the power to do so, it should

retain jurisdiction over state law claims and parties when such retention will serve the interests of justice by obviating the need for duplicative lawsuits in different forums and allowing a single court to preside over a complete case or controversy. The Kennedy's lawsuit is such, however, that no matter which way the Court rules on the question of pendent jurisdiction, it simply cannot survive intact in any single judicial forum. Even if the Court were to exercise its power of pendent jurisdiction to the fullest extent, the State Commissioner cannot properly be kept as a party to the Kennedy's federal suit for the reasons discussed in Sections II and III of this decision. Conversely, the federal courts have exclusive jurisdiction over tort claims brought against the United States, 28 U.S.C. § 1346(b), thus preventing any total consideration of the action in any state court. This Court's exercise of its power of pendent jurisdiction, therefore, would not serve the purposes this form of jurisdiction is designed to further.

In support of their position that pendent party jurisdiction over Suffolk should be retained, plaintiffs rely on dicta in *Aldinger* noting that:

> When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together.

427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original).

This Court fully accepts the validity of the Supreme Court's implicit suggestion that pendent jurisdiction should generally be exercised over appropriate additional parties brought in as defendants in a lawsuit asserting FTCA claims against the United States. This Court also fully agrees with the conclusion of the Eleventh Circuit in *Lykins v. Pointer, Inc.*, 725 F.2d 645 (11th Cir.1984), that there are no constitutional or statutory barriers beyond the normal requirements of *Gibbs* and *Aldinger* when jurisdiction over the federal claim is conferred by § 1346(b). *See also Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023 (5th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Rogers v. United States*, 568 F.Supp. 894 (E.D.N.Y.1983). The exercise of the Court's power of pendent party jurisdiction in the case at bar is nonetheless not warranted, despite the presence of an FTCA claim, since, as discussed above, the Kennedy's suit is of a sort that judicial economy and convenience would not be served by such an exercise of power given that, unlike the basic FTCA suits obviously envisioned by the *Aldinger* Court in the quoted statement, the claims presented in the instant suit cannot all be tried together in federal court. The mere fact that a lawsuit involves FTCA claims by no means necessarily requires a finding that it thus satisfies the considerations of judicial economy, convenience, and fairness to litigants essential to the exercise of discretion to hear a pendent party claim. *See Lykins*, 725 F.2d at 649.

Accordingly, the Court finds that, although it possesses the power in the Kennedy's lawsuit to obtain pendent party jurisdiction over Suffolk, it should decline to exercise its discretion to employ this power in the case at bar. Suffolk's motion to dismiss plaintiffs' claims against it is therefore granted.

## VI. PLAINTIFFS' CLAIMS AGAINST THE TOWN, THE VILLAGE, AND PENNY, AND CROSS–CLAIMS AMONG VARIOUS DEFENDANTS

The Court's conclusions as to the propriety of exercising pendent party jurisdiction over Suffolk are equally applicable to plaintiffs' claims against the Town, the Village, and Penny. Plaintiffs' Complaint is therefore dismissed insofar as, it alleges causes of action against the Town, the Village, and Penny.

Given the Court's ruling as to pendent party jurisdiction and the dismissal of plaintiffs' claims against various of the de-

fendants, the asserted cross-claims for indemnification and contribution by and against the various defendants must also be dismissed. Accordingly, any remaining cross-claims asserted by or interposed against any defendant against whom plaintiffs' claims have been dismissed are also hereby dismissed.[7]

## VII. CONCLUSION

For the reasons set forth throughout the Court's opinion, it is hereby ordered that:

1. Plaintiffs' Complaint is dismissed in its entirety insofar as it alleges claims against the State Commissioner.

2. The cross-claims of Suffolk, the Town, and the Village against the State Commissioner are dismissed.

3. The Fourth and Ninth Claims contained in Plaintiffs' Complaint are dismissed insofar as they allege claims against the United States.

4. Plaintiffs' Complaint is dismissed in its entirety insofar as it alleges claims against Suffolk.

5. Plaintiffs' Complaint is dismissed in its entirety insofar as it alleges claims against the Town, the Village, and Penny.

6. The remaining cross-claims for indemnification and contribution asserted by the various defendants are dismissed.

7. Plaintiffs' action shall proceed only against the United States and only as to the allegations against the United States contained in the First, Second, Third, and Eighth Claims of plaintiffs' Complaint.

SO ORDERED.

---

**7.** The Court's rulings make it unnecessary separately to consider the United States' motion to dismiss the cross-claims for indemnification and contribution Suffolk, the Town, and the Village assert against it or the Village's motion to dismiss plaintiffs' Complaint.