Thomas DEVITO, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 95–CV–2349 (JS).

United States District Court,
E.D. New York.

March 30, 1998.

John J. O'Connell, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for Plaintiffs.

Charles P. Kelly, Charles S. Kleinberg, United States Attorney's Office, Eastern District of New York, New York City, for Defendant.

*ORDER ADOPTING REPORT AND
RECOMMENDATION*

SEYBERT, District Judge.

On September 5, 1997, Magistrate Judge Joan Azrack issued a report and recommendation on defendant's motion to dismiss the above-captioned action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674 (the "FTCA"). After converting the motion to one for summary judgment, Magistrate Azrack recommended that the Court grant defendant's motion and dismiss this action for lack of subject matter jurisdiction based on the government's immunity from liability based on the facts of this case. Pending before the Court are plaintiff's objections to the report and recommendation. The background of this action is set forth fully in the Magistrate's report and will be referred to in this memorandum. Having fully considered the plaintiffs' objections and the defendant's response and for the reasons set forth below, the Court adopts the Magistrate's recommendation in its entirety.

DISCUSSION

As set forth fully in the Magistrate's report and recommendation, this action involves the efforts of the United States Army Corps of Engineers to stabilize the shorelines on the South Shore of Long Island, New York. Three projects in particular are the subject of this litigation: the Shinnecock Inlet Project, the Moriches Inlet Project and the Westhampton Groin Field Project, the last also known as the Fire Island Inlet to Montauk Point Project ("FIIMP"). These projects involved dredging, construction of jetties and construction of stone groins. The plaintiffs are property owners who claim that the Army Corps of Engineers' negligence has

accelerated erosion and property damage in violation of the FTCA.

In her report and recommendation, Magistrate Azrack found that the defendant's actions with respect to these projects were discretionary functions, and therefore the government is immune from liability under § 2680(a) of the FTCA. The government also argued, and Magistrate Azrack agreed, that it was also immune from liability on the Westhampton Groin Fields Project pursuant to the Flood Control Act, 33 U.S.C. § 702c. Magistrate Azrack further found that even if the Flood Control Act did not provide a source of immunity, the discretionary function exception nevertheless granted complete immunity to the government for these claims. The Court agrees with this conclusion and will address first the plaintiff's objections to the report and recommendation concerning their FTCA claim.

## I. FTCA CLAIMS

■ Magistrate Azrack correctly relied on the Supreme Court's decision in *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), for the proper standard in determining whether a governmental act falls into the discretionary function exception. A government entity will be immune if: (1) the challenged act involves an element of judgment or choice; and (2) if the challenged act involves an element of judgment, the decision must be based on considerations of policy. *Id.* at 322–23, 111 S.Ct. at 1273–74. As discussed more fully in the report and recommendation, with regard to the first element, there is no immunity if a federal statute, regulation or policy prescribes a course of conduct to follow. *Id.* at 322, 111 S.Ct. at 1273 (citation omitted).

### A. *The Element of Judgment or Choice*

Plaintiffs assert, as they did before Magistrate Azrack, that there are several federal regulations and policies that provide a specific mandate for the Army Corps of Engineers in how to stabilize the Long Island shoreline: (1) the Coastal Zone Management Act of 1972, 16 U.S.C. § 1451–1456 (the "CZMA"); (2) the New York Coastal Management Program (the "NYCMP"); (3) 15 C.F.R.

§ 930.32 relating to the CZMA; (4) H. Doc. No. 425 approving the Army Corps of Engineers' shoreline projects; (5) H. Doc. No. 126 relating to sandfill or sand bypassing options; and (6) certain General Design Memoranda ("GDMs").

■ The Court has reviewed the plaintiff's objections along with these policies and regulations and agrees with Magistrate Azrack's thorough analysis that there remains an element of judgment and choice with regard to the stabilization of the Long Island shoreline in all three projects at issue. Accordingly, the Court adopts the Magistrate's finding that the first prong of the discretionary function test set forth in *Gaubert* has been met.

Plaintiffs argue in their objections that to find that these functions were discretionary would be to give the Corps unfettered authority to do anything and there would be no rein on the Corps' discretion. The Court finds this argument to be without merit. As *Gaubert* clearly points out, there are two elements that must be satisfied before immunity can apply, the second being that the discretionary decision is based on a policy consideration. Moreover, there are other jurisdictional restraints in the Corps' enabling legislation that make plaintiffs' fears unwarranted. *See, e.g.,* 33 U.S.C. § 540 ("Federal investigations and improvements of rivers, harbors and other waterways shall be under the jurisdiction of and shall be prosecuted by the Department of the Army under the direction of the Secretary of the Army.").

Plaintiffs next argue that the Court must consider Judge Wexler's decision in *Kennedy v. United States, et al.,* 643 F.Supp. 1072 (E.D.N.Y.1986), on the grounds that he found that the Corps' decisions with respect to the Westhampton Groin Fields project were not discretionary. Contrary to plaintiffs' position, however, Judge Wexler found that he could not make that determination on the record before him because he chose not to convert the government's motion to one for summary judgment and that virtually no discovery had taken place. *Id.* at 1081. The decision in *Kennedy,* therefore, has no bearing on this case.

With respect to the Westhampton Groin Field projects, plaintiffs argue that in the Rivers and Harbors Act of 1960, Congress required the Corps to first build a sand beach and then, if necessary, construct stone groins. H.R. 425. The plaintiffs acknowledge, however, that the Corps' decision to use solely groins stemmed from the fact that the project required joint state and county participation, and that the county objected to the excessive cost of beach restoration. Plaintiffs seem to argue, therefore, that the Corps was required in that instance to override the county's objections, despite the fact that the enabling legislation required local cooperation. Reviewing the record as a whole, however, the Court agrees with Magistrate Azrack that the decision of the Corps as to the proper method to combat hurricane damage and beach erosion for the FIIMP was a discretionary function of the Corps of Engineers.

With respect to the inlet projects, plaintiffs argue that the Rivers and Harbors Act required the Corps to install a fixed by-passing plant which would transfer sand from one side of the inlets to the other, "provided that it is determined by further study that the cost of sand transfer by means of such a plant would be lower than the costs of operation of a proposed shallow-draft hyperdredge which would accomplish the same results." H. Doc. 126. Years later when the GDMs for the Inlet projects were completed, the GDM stated that "[t]he authorizing document gave us the option to utilize a dredge plant to stabilize the channel in lieu of jetty extensions; only if dredge plants were determined to be reliable and to be less costly than the authorized plan of improvement." Jones Decl., Ex. E.

The Court has reviewed H. Doc. 126 and the Inlet GDMs and agrees with Magistrate Azrack that none of these documents divest the Corps of discretion in proceeding with the Inlet Projects. First, H. Doc. 126 requires a fixed bypass facility only to the extent the Corps determines that it would be less costly and more reliable than dredging.

This language clearly gives the Corps the discretion to pursue the best course of conduct after its own study, rather than mandating the use of fixed sand bypassing facilities. Second, the GDMs also provide for discretion on the part of the Corps' since the GDMS, as Magistrate Azrack notes, give the Corps the right to modify the plan after further study.

Plaintiffs also argue that sand by-passing at the inlets was required under the CZMA, which requires federal projects to be consistent with state coastal zone management programs.[1] Under New York's coastal management plan ("NYSCMP"), no project can be undertaken unless it can be demonstrated that the project will not result in any "measurable increase in erosion." The GDM submitted to New York State for a consistency statement provided for sand by-passing and was thus approved. Plaintiffs argue that the consistency statement would not have been issued without the sand by-passing provision. Terchunian Decl. ¶ 28.

As to this argument, the Court agrees with Magistrate Azrack that there can be no mandatory action required by implication alone. Plaintiffs have conceded that the NYSCMP does not expressly require sand by-passing. In addition, the Terchunian Declaration also concedes that the GDMs for these projects outlined seven different types of sand bypass options, including dredging. Furthermore, sand bypassing was used at both inlets, although the use of a fixed sand bypassing plant was rejected. Jones Decl. ¶ 16, Ex. Q.; Jones Reply Decl. ¶¶ 2–5.

Finally, plaintiffs rely on *Faber v. United States*, 56 F.3d 1122 (9th Cir.1995), in which the discretionary function exception did not apply when the United Stated Forest Service failed to follow its own plan to protect persons swimming in the park's natural pool. The site management plan spelled out specific safety measures the Forest Service was to take, yet it followed none of them. The court found that the site management plan did not give the Forest Service the option to "do nothing" in response to the hazards enumerated in the plan. *Id.* The *Faber* decision,

1. Plaintiffs concede that, as Magistrate Azrack pointed out, the CZMA provides that consistency is only required "unless compliance is prohibited based upon the requirements of existing law applicable to federal agency operations." 15 C.F.R. § 930.32.

however, is inapposite to the case at bar. The GDMs for the Inlet projects did give the Corps' the option not to use fixed sand by-passing and provided for ample discretion on the part of the Corps in deciding how best to confront the problems at hand.

### B. Decisions Based on Policy Considerations

The Court has also reviewed Magistrate Azrack's conclusion that the second prong of the Gaubert test has been met; namely, that the Army Corps' of Engineers decisions relating to these projects were based on policy considerations. Despite plaintiffs' contention that the Army Corps of Engineers may not use cost as a policy consideration, the mission statement for the Corps requires the opposite conclusion. In particular, as Magistrate Azrack pointed out, that in consideration of the Corps' projects to investigate and improve rivers, harbors and other waterways, the Corps' board of engineers "shall have in view the amount and character of commerce existing or reasonably prospective which will be benefitted by the improvement, and the relation of the ultimate cost of such work, both as to the cost of construction and maintenance, to the public commercial interests involved, and the public necessity for the work and the property of its construction, continuance, or maintenance, at the expense of the United States." 33 U.S.C. § 541.

The Court has also considered the two cases cited by the plaintiffs at oral argument on these objections and finds that they are not persuasive on the facts of this case. Rather, the Court agrees with the Magistrate's analysis regarding the policy decisions in this case and finds that the two additional cases had no policy rationales that would justify the omissions in those cases.

First, in Lemke v. City of Port Jervis, et al., 991 F.Supp. 261, 263 (S.D.N.Y.1998), the district court found that the discretionary function exception did not apply where a housing inspector for the Farmers Home Administration failed to test for lead plumbing in plaintiff's home despite the fact that federal regulations and policies required inspection of homes for safety. The court also noted that there were no policy considerations implicated in the inspector's decision not to test for lead plumbing that would justify the failure to comply with the Administration's safety standards.

Second, in Duke v. Department of Agriculture, 131 F.3d 1407 (10th Cir.1997), the court considered the National Forest Service's failure to post a warning sign to campers that falling rocks in the park area created dangerous conditions. After plaintiffs instituted an action under the FTCA when the decedent camper was killed by falling rocks, the district court dismissed the action under the discretionary function exception. In reversing the district court, the Tenth Circuit found that while there was no direct mandate requiring warning for falling rocks, the policy manual required warning signs to ensure the safety of the public and no policy justifications existed for the failure to warn of the known risk of falling rocks.

In the present case, on the other hand, the Court agrees with Magistrate Azrack that the government has presented several policy considerations, in addition to cost, that factored into the Corps' decision not to use sandfills or sand bypassing. For example, the Corps considered the fact that fixed sand by-passing was mechanically unreliable, incapable of performing the required function and too expensive to be utilized. Jones Decl. ¶ 27. As to the Westhampton Project, the Corps considered the local opposition to continued beach restoration. Jones Decl. ¶ 49.

Based on the reasons set forth in the report and recommendation and as stated above, the Court concludes, as did Magistrate Azrack, that this action is barred under the immunity provisions of the FTCA.

### II. THE FLOOD CONTROL ACT

Magistrate Azrack also considered the government's argument that it is immune from liability to the extent that its actions related to correcting damage from floods or flood waters under the Flood Control Act, 33 U.S.C. § 702c. Noting that at least part of the Westhampton Groin Fields project was flood control, Magistrate Azrack found that the immunity clause was applicable to the Corps' work at that particular project. Notwithstanding this conclusion, however, she

also concluded that even without the immunity provided under the Flood Control Act, the discretionary function immunity of the FTCA stripped the court of subject matter jurisdiction for claims relating to any of the three projects in question.

 Plaintiffs argue that Magistrate Azrack was bound by Judge Wexler's decision in *Kennedy v. United States, et al.*, 643 F.Supp. 1072 (E.D.N.Y.1986), in which he found that the Flood Control Act does not apply to actions taken by the Corps with regard to the Groin Fields Projects along the south shore of Long Island. As a preliminary matter, Court is not "bound" by Judge Wexler's decision as plaintiffs suggest, although the decision may have some persuasive value. Nevertheless, just prior to the decision in *Kennedy,* the Supreme Court rendered a decision in *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), which indicates that the immunity clause in the FCA is to be broadly construed to include immunity for negligence alleged to have occurred from "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Id.* at 605, 106 S.Ct. at 3121. Thus, the Court also noted that the immunity provided in § 702c "safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language." *Id.* at 608, 106 S.Ct. at 3122–3123 (citation omitted).

In light of *James,* the Court agrees with Magistrate Azrack that to the extent the Westhampton Groin Fields project was related to flood control, and to the extent plaintiffs claim damage to their property resulting from flooding that was caused in substantial part by the design of the flood control project, the immunity in § 702c applies. More importantly however, is the fact that even without the grant of immunity in § 702c, plaintiffs' claims must be dismissed in their entirety because the Court lacks subject matter jurisdiction under the discretionary function exception to the FTCA.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Azrack's September 5, 1997 Report and Recommendation in its entirety and the complaint is dismissed with prejudice. The Clerk of the Court is directed to mark this case as closed.

SO ORDERED.