MEMORANDUM AND ORDER
 

 TRAGER, District Judge.
 

 The City of New York and the Department of Parks and Recreation of the City of New York (collectively, “City defendants”); the State of New York, the Department of State, the Department of Environmental Conservation, and the Office of General Services (collectively, “State defendants”); and the United States of America have moved to dismiss the complaint filed by plaintiffs pro se, Linda and Arkady Vaizburd (“Vaizburds”), under Rule 12(b)(1) and (6).
 
 [1]
 
 The Vaizburds allege various causes of action in their eight count complaint (some easier to discern than others) and seek monetary damages totaling $110 million. Their claims arise from damage done to their home and property as a result of the allegedly negligent design and implementation of a storm damage reduction and shoreline protection project on the Coney Island beachfront (“Project”).
 

 Background
 

 The Vaizburds own two pieces of property in an enclosed housing community
 
 *212
 
 known as Sea Gate on Gravesend Bay in Brooklyn.
 
 See
 
 Compl. K 12. When purchased, the first piece of property bordered the shoreline, and the second was adjoining underwater property.
 
 See id.
 
 ¶ 14. Today, the second property is no longer underwater, but is filled with sand, which continues to rise.
 
 See
 
 Pis.’ Mem. Opp’n City Defs.’ Mot. Dismiss, Ex. A (pictures of the waterfront home before and after the project) [hereinafter Pis.’ Opp’n City’s Mot.]. The house on the first property has also been damaged by accumulating sand.
 
 See
 
 Compl. ¶ 21; Pis.’ Opp’n City Mot., Ex. B. Debris and garbage have also washed ashore on this newly formed “beach,” and, much to the Vaizburds’ chagrin, it has also become a favorite spot for jeep and motorcycle racing.
 
 See
 
 Compl. ¶¶ 22-23; Pis.’ Opp’n City Mot., Exs. D, E, F,
 
 &
 
 I.
 

 This huge influx of sand from the Bay is the result of a project undertaken by the United States Army Corps of Engineers (“ACE”).
 
 See
 
 Mem.Supp. United States’ Mot. Dismiss at 2 [hereinafter U.S.Mem.]; Pis.’ Aff. Opp’n Def.U.S.Mot. Summ.J., ltr. from the N.Y. State Dept, of Envtl. Con-serv. of 7/16/98 (“[A]s a result of the Coney Island/Seagate beach nourishment project undertaken by the U.S. Army Corps of Engineers[,][s] and washed around the western tip of Seagate and accumulated on your property on the lee shoreline.”). The Project, which began in April of 1994 and ended in March of 1995, involved filling the Coney Island beach with approximately 2.3 million cubic yards of sand, constructing a stone groin,
 
 [2]
 
 and placing “a fillet
 
 [3]
 
 of sand downdrift of the groin.” U.S.Mem. at 2. ACE proposed nine alternative projects that would accomplish these goals and, in a General Design Memorandum, evaluated each project in terms of expense and environmental impact.
 
 See id.
 
 at 3. ACE initially approved a version of the Project that put the groin at Norton Point and required access through the Sea Gate community.
 
 See id.
 
 at 4. However, due to strong local opposition, ACE had to adopt an alternative project plan that involved construction of a groin at West 37th Street, on the eastern border of the Sea Gate community.
 
 See id.
 
 To help minimize any negative impact the groin might have on the shoreline, a fillet of beach was also created, which extends along the downdrift side of the groin for 2,300 feet.
 
 See id.
 
 The execution of the project, including the construction of the groin and fillet, was not actually performed by ACE but by an independent contractor — Bean Horizon-Weeks Marine Joint Venture.
 
 See id.
 
 at 5.
 

 Plaintiffs allege
 
 [4]
 
 that the additional sand dumped onto the Coney Island beach, placed around the groin, and placed on the fillet has eroded more rapidly than ACE had predicted.
 
 See
 
 Compl. ¶¶ 11, 18, 19. This sand has drifted downstream, accumulating directly in front of the Sea Gate community.
 
 See id.
 
 Plaintiffs are seeking damages from the United States for improper and negligent design and maintenance of the Project; and continuing nuisance.
 
 [5]
 

 See id.
 
 ¶¶ 26-32. They seek damages from the State and City defendants for unlawful taking of their property, in violation of the Fourteenth
 
 *213
 
 Amendment; conspiracy to deprive them of their civil rights under 28 U.S.C. § 1983 and 18 U.S.C. §§ 241, 242; violations of various state environmental laws; and continuing and attractive nuisance.
 
 See id.
 
 ¶¶ 38—53, 58-65. Plaintiffs also seek damages from the City defendants for negligently withholding police assistance.
 
 See id.
 
 at ¶¶ 54-57.
 

 Discussion
 

 (1)
 

 The United States
 
 [6]
 

 Although the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 2401
 
 et seq.,
 
 waives the sovereign immunity of the United States, allowing it to be sued for its torts, immunity is not waived when one of the exceptions to the FTCA is applicable. The United States maintains that the “discretionary function” exception applies here, negating its waiver of immunity under the FTCA and, thus, removing the jurisdiction of the court.
 
 [7]
 

 The FTCA does not apply to “any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.” 28 U.S.C. § 2680(a). A two-prong test has been established by the Supreme Court as a guide to determining which governmental functions are discretionary and which are not. The first prong of the test requires a court to decide whether the act in question “involves an element of judgment or choice.”
 
 Berkovitz v. United States,
 
 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). If a “federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,” there is no choice to be made, no judgment to be exercised, and, thus, no discretion. In such a case, the exclusion does not apply.
 
 Id.
 

 Once the threshold element of discretion has been found, the second prong of the test must be satisfied with a determination that the “governmental actionL ] and decision ][was] based on considerations of public policy.”
 
 Id.
 
 at 537, 108 S.Ct. at 1959. “Because the purpose of the exception is to ‘prevent judicial “second-guessing” of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,’ ” the governmental action must be one that is based upon considerations of public policy in order to qualify for the discretionary function n exception.
 
 United States v. Gaubert,
 
 499 U.S. 315, 323, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting
 
 Berkovitz,
 
 486 U.S. at 536-37, 108 S.Ct. at 1959). Often, these two prongs intertwine so that “[wjhen established Government policy ... allows a Government agent to exercise discretion, it must be presumed that the agent’s acts are [also] grounded in policy when exercising that discretion.”
 
 Id.
 
 at 324, 111 S.Ct. at 1274.
 

 While “there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception,”
 
 id.
 
 at 325, 111 S.Ct. at 1275, until the Supreme Court’s decision in
 
 Gaubert,
 
 it was less clear whether actions taken on
 
 *214
 
 an operational level could ever be discretionary.
 
 Gaubert,
 
 however, elucidated the issue by pronouncing the planning-level/operational-level distinction “a nonexistent dichotomy.”
 
 Id.
 
 at 326, 111 S.Ct. at 1275. Since the exception turns on the presence or absence of discretion and since “[discretionary conduct is not confined to the policy or planning levél,”
 
 id.
 
 at 325, 111 S.Ct. at 1275, there is no reason that “decisions made at an operational level [can] not also be based on policy.”
 
 Id.
 
 at 326, 111 S.Ct. at 1275. These operational decisions must be examined to determine whether policy-based discretion was exercised in the execution of the project. If the project plan is sufficiently detailed, leaving little or nothing to the exercise of judgment, the negligent implementation of the plan will fall “outside the scope of the discretionary function exception,” and the government will be held liable.
 
 Id.,
 
 111 S.Ct. at 1276;
 
 see, e.g., Indian Towing Co. v. United States,
 
 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (because no policy judgment was exercised in the daily maintenance of a lighthouse, the government’s failure to keep it in good working condition was not immunized by the FTCA’s discretionary function exception);
 
 Andrulonis v. United States,
 
 952 F.2d 652, 654 (2d Cir.1991) (the discretionary function exception did not apply to a government employee’s negligent failure to warn, because there was no policy discretion involved in deciding whether or not the warning should be given).
 

 The question of whether a beach erosion project conducted by ACE falls under- the discretionary function exception to the FTCA was recently answered affirmatively in this district by Judge Seybert, who adopted the report and recommendation of Magistrate Judge Azrack on this issue.
 
 See Devito v. United States,
 
 12 F.Supp.2d 269 (E.D.N.Y.1998) (Seybert, J.);
 
 DeVito v. United States,
 
 No. 95-CV-2349, 1997 WL 1038120 (E.D.N.Y Sept. 5, 1997) (Azrack, M.J.). In
 
 Devito,
 
 plaintiffs sought money damages under the FTCA for the accelerated erosion of their beachfront property which was allegedly caused by various ACE projects undertaken in an effort to stabilize the South Shore of Long Island.
 
 See Devito,
 
 12 F.Supp.2d at 269-70. The United States successfully asserted that the discretionary function exception to the FTCA provided it with immunity from liability.
 
 See id.
 
 at 270.
 

 Although federal regulations and policies authorized ACE to stabilize the Long Island shoreline, the court found that ACE exercised ample judgment and choice in the actual implementation of the projects to satisfy the first prong of the
 
 Gaubert
 
 inquiry.
 
 See id.
 
 The second prong of the inquiry — were the decisions based on policy considerations? — was also found to be satisfied because the ACE had configured several project designs and ultimately chose and implemented one based on the respective cost, reliability, and degree of local opposition to each proposed method.
 
 See id.
 
 at 272. Since the
 
 Gaubert
 
 test was met, Judge Seybert held that the United States remained immune from suit on the plaintiffs’ claims.
 
 See id.
 

 DeVito
 
 provides strong precedent to support the United States’ motion here, particularly since the facts are so similar. Just as in
 
 DeVito,
 
 the authorization for ACE to embark on this Project originated in federal statutes and regulations,
 
 see
 
 U.S.Mot. at 15-16 & n. 5, but there was no specific course of action dictated. Instead, ACE exercised the same kind of judgment and choice when selecting an appropriate plan for Coney Island as it did in the
 
 DeVito
 
 project. In fact, nine different project plan designs were developed as part of the General Design Memorandum.
 
 See
 
 Decl. of Joseph R. Vietri ¶¶ 13-14 [hereinafter Vietri Decl.]. One was selected and proposed to the Sea Gate community,
 
 see id.
 
 ¶¶ 15-16, but a different plan was eventually adopted and implemented, ironically, due to their community's resistance to the first.
 
 See id.
 
 ¶¶ 17. Similarly, on an operational level, the actual implementation of the project was not precisely
 
 *215
 
 dictated by any plan, regulation, or statute. On the contrary, ACE and its contractor regularly exercised their judgment as to how to proceed at each phase of the project.
 
 See
 
 Conetta Decl. ¶¶ 6,11-12. Thus, since ACE exercised discretion in the design, planning, and implementation of the Project, the first prong of the
 
 Gaubert
 
 test is satisfied here.
 

 The second prong of
 
 Gaubert
 
 is also satisfied here because the Government’s choices were based on policy considerations. At the planning level, the Project was reviewed by the Office of Chief Engineer in Washington, D.C. where “a wide-range of policy considerations, including economics, resource allocation, budgetary constraints, greatest net benefit, damage prevention, environmental protection, consistency, community input and cooperation, political implications, and the support and cooperation of non-federal entities” were taken into account. Vietri Decl.¶ 21. Operationally, considerations of environmental impact, cost, reliability, and safety were all factored into each step of the Project’s implementation.
 
 See id.
 
 ¶¶ 8,13-14.
 

 Thus, as there are no material issues of fact in dispute here and as both prongs of the
 
 Gaubert
 
 test are met in this case, the discretionary function exception to the FTCA is applicable, and the United States’ motion for summary judgment is granted.
 
 [8]
 

 (2)
 

 State Defendants
 

 The Vaizburds are seeking purely monetary compensation from the State defendants (the State of New York, the Department of State, the Department of Environmental Conservation, and the Office of General Services) for damage done to their property by the Project. The State defendants maintain that they are protected by the Eleventh Amendment from defending the claims asserted in this suit and, thus, move to dismiss plaintiffs’ complaint under Rule 12(b)(1).
 

 The Supreme Court has determined that suits brought by private citizens against their own states are barred by the Eleventh Amendment, unless “the state has consented to be sued or Congress has expressly abrogated the state’s immunity.”
 
 Kostok v. Thomas,
 
 105 F.3d 65, 67 (2d Cir.1997). Eleventh Amendment immunity encompasses state agencies,
 
 see Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,
 
 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), and “serves to avoid ‘the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties,’ ”
 
 Seminole Tribe of Florida v. Florida,
 
 517 U.S. 44, 58, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996) (quoting
 
 Puerto Rico Aqueduct,
 
 506 U.S. at 146, 113 S.Ct. at 689 (internal quotation marks omitted)). Although a plaintiff may seek prospective relief against individual state officials for violating federal law,
 
 see Ex Parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in the absence of a State’s express waiver or Congressional abrogation of immunity,
 
 [9]
 
 federal courts have no jurisdiction over cases in which plaintiffs are seeking retroactive monetary relief.
 
 See Kostok,
 
 105 F.3d at 69.
 

 
 *216
 
 As there is no evidence here that the State of New York has waived, or that Congress has nullified, Eleventh Amendment immunity, plaintiffs are unable to proceed on any of their claims against the State defendants in federal court; thus, the State defendants’ motion to dismiss is granted.
 
 [10]
 

 (3)
 

 City Defendants
 

 The involvement of the City defendants (the City of New York and the Department of Parks and Recreation of the City of New York) with the Project seems to be limited to issuing a number of unspecified permits to ACE and approving design, construction, and maintenance plans.
 
 See
 
 Compl. ¶ 41. Based on these acts, plaintiffs have asserted a number of causes of action against the City defendants, seeking money damages. The Vaizburds are also suing the City defendants for negligently withholding police assistance when plaintiffs called to report trespassers on their newly-formed beach.
 
 See id.
 
 ¶ 23. The City defendants have moved to dismiss all claims under Rule 12(b)(1) and/or 12(b)(6).
 

 A. Takings Claim
 

 Plaintiffs allege that the City defendants should be held hable under the Fifth and Fourteenth Amendments to the Constitution for illegally taking their property. They seem to be asserting a physical taking, as opposed to a regulatory one, since plaintiffs cite the Project as the cause of their damages and since no government regulation is mentioned in the complaint that could potentially form the basis of a regulatory takings claim. No physical takings claim may be properly brought in federal court, however, unless plaintiffs can show that “their property was taken under color of state law, without due process or just, compensation, and that no ‘adequate provision’ to compensate for the taking exists under state law.”
 
 Kohlasch v. New York State Thruway Auth.,
 
 482 F.Supp. 721, 723 (S.D.N.Y.1980). Plaintiffs are unable to make such a showing here..
 

 An established prerequisite to asserting a claim under the Fifth Amendment’s Just Compensation Clause is that the landowner first seek and be denied adequate compensation from the state, provided the state has “a reasonable, certain and adequate provision for obtaining compensation [ ] at the time of the taking.”
 
 Williamson County Reg’l Planning Comm’n v. Hamilton Bank,
 
 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) (internal quotation and citation omitted);
 
 see also Villager Pond, Inc. v. Town of Darien,
 
 56 F.3d 375, 379 (2d Cir.1995) (“A landowner ‘has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State.’” (citing
 
 Williamson,
 
 473 U.S. at 195, 105 S.Ct. at 3121)). New York State provides two such “reasonable, certain and adequate provision[s].”
 
 Williamson,
 
 473 U.S. at 194, 105 S.Ct. at 3120. One is to seek compensation through the procedures detailed in the New York State Eminent Domain Procedure Law.
 
 See
 
 
 *217
 
 N.Y.Em.Dom.Proc.Law § 101
 
 et seq.
 
 The other is to bring a state law action under Article I, Section 7 of the New York State Constitution.
 

 Since plaintiffs here did not attempt to seek compensation through either of these state law methods, they cannot, at least at this time, assert that their claim cannot be adequately compensated under state law.
 
 See Deepwells Estates, Inc. v. Incorporated Village of Head of the Harbor,
 
 973 F.Supp. 338, 347-48 (E.D.N.Y. 1997) (citing these state law methods as necessary prerequisites to raising a federal constitutional takings claim). Thus, plaintiffs’ takings claim against the City defendants should be dismissed as unripe.
 
 [11]
 

 B. Negligent Withholding of Police Assistance
 

 Plaintiffs also claim that the City defendants are liable to them for damages incurred when the police failed to respond to a 911 call in 1998 and when Mr. Vaizburd was hit by a motor vehicle on his beach property in February of 1999.
 
 See
 
 Compl. ¶¶ 55, 56. It seems that plaintiffs believe this liability stems from the substantive Due Process component of the Fourteenth Amendment (a § 1983 claim) and/or from state law; however, neither of these laws provide a remedy on the basis of these allegations.
 

 In order for a § 1983 claim to be successfully maintained against a municipality, a plaintiff must initially allege the deprivation of a constitutional right through a custom or policy of the municipality.
 
 See Monell v. Department of Soc. Servs.,
 
 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978);
 
 Villante v. Department of Corrections,
 
 786 F.2d 516, 519 (2d Cir.1986). There is no general constitutional right to police protection, and, in fact, “nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.”
 
 DeShaney v. Winnebago County Dept. of Soc. Servs.,
 
 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). The only judicially recognized exceptions to this rule are when “the State takes a person into its custody and holds him there against his will,”
 
 id.
 
 at 199-200, 109 S.Ct. at 1005, or when the government affirmatively creates or increases the danger an individual is placed in, see
 
 Dwares v. City of N.Y.,
 
 985 F.2d 94, 98-99 (2d Cir.1993). Since neither of these exceptions is applicable here, the plaintiffs have failed to and, indeed, cannot allege sufficient facts to justify a § 1983 claim against the City defendants.
 
 [12]
 

 Plaintiffs’ state law cause of action is just as unsupportable. New York law does not place a general duty on municipalities to provide police assistance to their citizens unless a “special relationship” exists.
 
 See, e.g., Garrett v. Holiday Inns,
 
 
 *218
 

 Inc., 58
 
 N.Y.2d 253, 261, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983);
 
 Riss v. City of N.Y.,
 
 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968). A special relationship exists when the government affirmatively assumes an obligation to protect a certain person or group of people.
 
 See Garrett, 58
 
 N.Y.2d at 261-62, 460 N.Y.S.2d at 778, 447 N.E.2d 717. For example, a municipality owed a duty to a child who was injured while a crossing guard was absent from her post, because the municipality had voluntarily assumed the job of protecting a discrete group of people (viz., school-children crossing the street).
 
 See Florence v. Goldberg,
 
 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978). Likewise, the police were found to have had a duty to protect a crime victim who continued to expose herself to danger (and eventually death) by remaining in her home in reliance on a 911 operator’s assurance that the police were on the way.
 
 See DeLong v. County of Erie,
 
 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983). No special relationship can be found to exist here, however, since there is no evidence that the police assumed a special obligation to protect-or assist the Vaizburds or any discrete group they belong to. Thus, plaintiffs’ claim against the City defendants for negligently failing to provide police assistance is dismissed.
 

 C. Nuisance
 

 Plaintiffs have also charged the City defendants with creating a “continuing nuisance” or an “attractive nuisance” by “storing dangerous debris, next to plaintiffs [sic] properties in [sic] residential neighborhood.” Compl. 111163-64. The City defendants have moved to dismiss this nuisance claim on the grounds that the allegation was not properly pleaded in the complaint and, even if the cause was properly pleaded, federal jurisdiction is lacking.
 
 See
 
 City Mot. at 24. Although the decision to retain a pendant state law cause of action ultimately lies within the realm of judicial discretion, the Supreme Court has encouraged the dismissal of state law claims when “all federal-law claims are eliminated before trial.”
 
 Carnegie-Mellon Univ. v. Cohill,
 
 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Because all of plaintiffs’ federal law claims have been dismissed, the state law claim of nuisance will be dismissed, without reach-' ing the merits of the claim.
 

 D. State Environmental Laws
 

 For similar reasons, plaintiffs’ other state law claims will be dismissed. The Vaizburds have sued the City defendants for alleged violations of the following state statutes: the 1986 New York State Environmental Quality Bond Act, N.Y.Envtl.Conserv.Law § 52-0101
 
 et seq.;
 
 the 1996 New York State Clean Air/Clean Water Bond Act,
 
 N.Y.Envtl.Conserv.Law
 
 § 56-0101
 
 et seq.;
 
 the New York Tidal Wetlands Act, N.Y.Envtl.Conserv.Law § 25-0101
 
 et seq.;
 
 and the Waterfront Revitalization and Coastal Management Program, N.Y.Exec.Law § 910
 
 et seq.
 
 Whether a private party can recover damages from a municipality for violation of or failure to enforce the provisions of these statutes appears to be a novel state law issue; as such, the question is better resolved by the New York state courts. Thus, the City defendants’ motion to dismiss plaintiffs’ state environmental law claims is granted, again without deciding the merits of such claims.
 

 Conclusion
 

 Because the discretionary function exception to the FTCA applies to the facts of this case, the United States’ motion for summary judgment is granted. Similarly, since “it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their federal] elaim[s] which would entitle [them] to relief,”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the State and City defendants’ motions to dismiss are granted, without prejudice to any state law claims the Vaizburds might be entitled to
 
 *219
 
 bring in state court. The Clerk of the Court is directed to close the case.
 

 [1]
 

 . The United States’ motion was converted to a summary judgment motion by an order of this court dated December 23, 1999, in light of the fact that the government had submitted supporting declarations with its motion to dismiss which presented additional facts not found in the pleadings.
 
 See
 
 Fed.R.Civ.P. 12(c), 56;
 
 see also Fonte v. Board of Managers of Continental Towers Condominium,
 
 848 F.2d 24, 25 (2d Cir.1988). Plaintiffs were given thirty (30) days from the date of the order in which to submit any additional responsive materials and were also provided with a “Notice to Pro Se Litigant Opposing Motion For Summary Judgment,” in accordance with Local Civ.R. 56.2.
 

 [2]
 

 . A groin is a structure running perpendicular to the beach and is defined by ACE as “a shore protection structure designed to trap longshore drift for building protective beach, retarding erosion of an existing beach, or preventing longshore drift from reaching some downdrift point, such as a harbor or inlet.” Compl. ¶ 11 (quoting Army Corps of Engineers,
 
 Shore Protection
 
 Manual).
 

 [3]
 

 . A fillet is "a narrow strip of material.” Webster’s II New Riverside University Dictionary 478 (2d ed.1988).
 

 [4]
 

 . For the purpose of the motions to dismiss, all of plaintiffs’ factual allegations are presumed true.
 
 See Up State Fed. Credit Union v. Walker,
 
 198 F.3d 372, 373 (2d Cir.1999).
 

 [5]
 

 . Plaintiffs’ claim against the United States for an unlawful taking of their property in violation of the Fifth Amendment,
 
 see
 
 Compl. ¶¶ 33-37, was transferred to the Court of Federal Claims on consent of the parties in September of 1999.
 
 See
 
 Order of 1/7/2000.
 

 [6]
 

 . The United States sought to dismiss plaintiffs’ complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. As noted above, the motion has been converted to one for summary judgment.
 
 See supra
 
 note 1.
 

 [7]
 

 . The United States also argues that the "independent contractor" exception to the FTCA applies in this case. In short, this exception only renders the government liable for the negligent acts of employees, a term that "does not include any contractor with the United States.” 28 U.S.C. § 2671. Because Bean Horizon-Weeks Marine Joint Venture contracted to construct the project,
 
 see
 
 Deck of Ronald D. Conetta ¶ 6 [hereinafter Conetta Deck], and because no government employee directed, controlled, or supervised the daily construction work,
 
 see id.
 
 ¶¶ 11-12, this exception to the FTCA may also be applicable here; however, given the present resolution of the United States’ discretionary function argument, the issue need not be discussed.
 

 [8]
 

 . The United States also alleges that plaintiffs’ complaint should be dismissed on summary judgment for failure to exhaust administrative remedies, since Arkady Vaizburd has not filed an administrative tort claim, as required by 28 U.S.C. § 2675(a).
 
 See
 
 U.S.Mot. at 24. On the other hand, Linda Vaizburd did file two administrative tort claims totaling $408,-450.00 with ACE sometime before October of 1998.
 
 See id.
 
 at 25. The United States argues that Mrs. Vaizburd’s claims were untimely under the FTCA's two-year statute of limitations,
 
 see
 
 28 U.S.C. § 2401(b), or, alternatively, that any recovery here must be limited to the amount of the administrative claim.
 
 See
 
 28 U.S.C. § 2675(b). Since the FTCA does not provide relief for the plaintiffs' claims, these arguments need not be addressed.
 

 [9]
 

 In 1989, the Supreme Court made clear that Congress’ authority to abrogate state immunity is only permitted under section five of the Fourteenth Amendment.
 
 See Seminole Tribe,
 
 517 U.S. at 59, 116 S.Ct. at 1125.
 

 [10]
 

 . Plaintiffs’ § 1983 and § 1985 claims are also improperly asserted against the three State defendants, since only “persons” are liable under these statutes.
 
 See, e.g., Spencer v. Doe,
 
 139 F.3d 107, 111 (2d Cir.1998) ("Neither a state nor one of its agencies ... is a 'person' under § 1983”);
 
 Kelley v. City of N.Y. et al.,
 
 659 F.Supp. 639, 642 (E.D.N.Y.1987) (a state is not a "person” within the meaning of § 1983 or § 1985).
 

 Similarly inappropriate are plaintiffs’ claims against the State and City defendants for conspiratorial deprivation of their civil rights under 18 U.S.C. §§ 241, 242. These statutes authorize the United States to prosecute criminal defendants on conspiracy charges and do not create a private cause of action for damages.
 
 See, e.g., Vasile v. Dean Witter Reynolds Inc.,
 
 20 F.Supp.2d 465, 478 (E.D.N.Y.1998);
 
 Powers v. Karen,
 
 768 F.Supp. 46, 51 (E.D.N.Y.1991),
 
 aff'd
 
 963 F.2d 1522 (2d Cir.1992).
 

 [11]
 

 . Even if plaintiffs’ takings claim was ripe, it would be unlikely to succeed. "The [Supreme] Court explained that a permanent physical occupation occurs when government action permanently destroys the three rights associated with the ownership of property: the power to possess, to use, and to dispose.”
 
 Southview
 
 Assoc.,
 
 Ltd. v. Bongartz,
 
 980 F.2d 84, 93 (2d Cir.1992) (citing
 
 Loretto v. Teleprompter Manhattan CATV Corp.,
 
 458 U.S. 419, 435, 102 S.Ct. 3164, 3176, 73 L.Ed.2d 868 (1982)). Here, the accumulation of sand on their property has not deprived the Vaiz-burds of their "right to possess the occupied area,” nor has it "forever denied” them the ability to use or dispose of the property.
 
 Southview Assoc.
 
 980 F.2d at 93 (quotation and citation omitted). Thus, no physical taking seems to have occurred.
 

 [12]
 

 . Plaintiffs have similarly failed to allege any facts or assert any claim that the failure of the police department to respond to their call was due to a deliberate custom/policy of the department, an additional factor necessary for a § 1983 action against a municipal defendant. At most, the complaint seems to suggest negligence — the police department failed to reasonably perform a duty they owed to the plaintiffs. Negligence, however, is probably not enough to support a § 1983 claim here.
 
 See Daniels
 
 v.
 
 Williams,
 
 474 U.S. 327, 329-30, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).