Nancy CALLAHAN & Robert Callahan, in their own behalf & as representatives for their three minor children, Robert Callahan, Jr, Emma Callhan, & Katherine Callahan, Plaintiffs,

v.

THE UNITED STATES of America, Defendants.

No. 03 CIV. 8615(CM).

United States District Court, S.D. New York.

July 23, 2004.

Alan Friedman, Chase Caro, Caro & Associates, P.C., White Plains, NY, for Plaintiffs.

Lisa R. Zornberg, U.S. Attorney's Office, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS MOTION TO DISMISS

McMAHON, District Judge.

Plaintiffs Nancy and Robert Callahan, on their own behalf and as representatives of their three minor children, Robert Callahan, Jr., Emma Callahan, and Katherine Callahan, bring this action seeking money damages against the United States of America. Plaintiffs claim that the United States Marshals Service (the "Marshals Service") committed trespass and nuisance and violated Plaintiffs' "constitutional right to privacy," in the course of providing protective services to Plaintiffs' former next door neighbor, United States District Judge Michael B. Mukasey. Plaintiffs have stipulated that the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* governs their tort claims.

Defendants move to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the Defendant's motion to dismiss the case for lack of jurisdiction is granted.

## I. BACKGROUND

From January 2001 through October 2002, the Callahans shared a residential party wall with the Honorable Michael B. Mukasey on East 82nd Street in Manhattan. During that time period, Judge Mukasey was under the 24–hour a day protection of the Marshals Service due to threats against his personal safety stemming from

his judicial role in handling terrorism cases. The Complaint alleges that the Marshals Service erected sidewalk and street barricades, closed off formerly public parking spaces, set up security cameras, and posted "multiple teams" of armed deputy marshals in the vicinity of Judge Mukasey's home. (Complaint ¶¶ 6, 27–28).

Plaintiffs allege that this security detail constituted an "intrusive presence" that disrupted their use and enjoyment of their home. (Complaint ¶¶ 5–7, 29). Specifically, Plaintiffs complain that the sidewalk barricades made it difficult for them to enter and leave their home; that they had to identify themselves to Marshals to get access to their home; that they had to ask Marshals to move barricades to unload items from their car; that Marshals Service employees congregated on their front door stoop and increased noise levels by talking loudly and running car motors; that the Marshals Service set up cameras around Judge Mukasey's home that also filmed parts of Plaintiffs' property; and that the constant presence of Marshals Service employees frightened Plaintiffs' minor children. (Complaint ¶¶ 6–7, 27–28, 31–33).

In addition, Plaintiffs dispute the effectiveness of the protective services. The Complaint alleges that the Marshals Service's security operation "was not likely to be pervasive enough to protect the Judge or his neighbors," and that anyone seeking to attack Judge Mukasey still had "prime access...to circumvent the Marshal's presence." (Complaint ¶ 30).

In an effort to remedy the situation, Plaintiffs sent correspondence to every elected and appointed official perceived as being in a position to affect the Marshal's conduct, including the President of the United States, Senators, City Councilmen, and Parking officials. In addition, Plain-

tiffs sent several letters to the Marshals Service directly, requesting non-monetary relief.

On January 12, 2002, the Callahans's attorney sent a letter to the Marshals Service with an attached draft complaint, stating that they intended to file the complaint "in substantially similar form within the week" if they were unable "to resolve issues of my clients' safety and property rights." (Ex. A, Caro Declaration). In response to the January 14, 2002 letter, the United States Attorney's office sent correspondence stating that because of the highly sensitive information included in the draft Complaint, the Callahans "should not file the draft complaint in its current form or disseminate it in any way". (Ex. B, Caro Declaration). The United States Attorney's office suggested meeting with the Callahans to address their concerns. Several meetings took place between the parties.

Following Judge Mukasey's move to a different residence, Plaintiffs brought this claim on October 31, 2003.

## II. DISCUSSION

### a. Standard for Motion to Dismiss

Rule 12(b)(1) provides that a court must dismiss a lawsuit if it does not have subject matter jurisdiction over the claim. In these instances, Plaintiffs bear the burden of proving subject matter jurisdiction for their claims. *See Celestine v. Mount Vernon Neighborhood Health Center,* 289 F.Supp.2d 392, 399 (S.D.N.Y.2003); *Societe Nationale d'Exploitation Industrielle v. Salomon Bros. Int'l Ltd.,* 928 F.Supp. 398, 402 (S.D.N.Y.1996). Furthermore, because subject matter jurisdiction involves the Court's power to decide the case, in considering a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, courts "need not accept as

true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other material outside the pleadings." *Id.; see also Dillard v. Runyon,* 928 F.Supp. 1316, 1322 (S.D.N.Y.1996), *aff'd mem.,* 108 F.3d 1369, 1997 WL 138691 (2d Cir.1997).

### b. Plaintiffs' Claims are Barred by the Discretionary Function Exception to the FTCA

■■■ It is firmly established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Waivers of sovereign immunity are to be strictly construed, *Morales v. United States,* 38 F.3d 659, 660 (2d Cir.1994), and "[a]ny limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant." *Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 719 (2d Cir.1998).

In the present case, Plaintiffs sue under the FTCA, which waives the Government's liability for certain torts committed by federal employees. *See* 28 U.S.C. § 2674. However, the waiver is limited, and the liability of the United States under the FTCA is subject to a discretionary function exception. *See* 28 U.S.C. § 2680(a); *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Section 2680(a) provides that the Government is not liable for:

> . . . any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not

such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■■■ The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert,* 499 at 323, 111 S.Ct. 1267 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). When the discretionary exception applies, the Government is shielded from suit even if it exercised discretion improperly. 28 U.S.C. § 2680(a) (providing that where applicable the exception applies "whether or not the discretion involved be abused"); *see also In re Agent Orange Prod. Liab. Litig.,* 818 F.2d at 215 ("the fact that discretion is exercised in a negligent matter does not make the discretionary function exception inapplicable").

■■■ In deciding whether the exception applies, the Court must engage in a two-step analysis as set forth in *United States v. Gaubert,* 499 U.S. at 322–24, 111 S.Ct. 1267. First, the Court must determine whether the challenged action involves an element of choice or judgment, as opposed to a circumstance in which a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *See Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267. If no such mandate exists, the action is considered one of choice or judgment and the first step is satisfied. *See Fazi v. United States,* 935 F.2d 535, 538 (2d Cir.1991).

Second, even in those instances where judgment or choice is involved, the discretionary exception only applies when that judgment or choice is "based on considerations of public policy." *Gaubert,* 499 U.S. at 323, 1991 WL 38047 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The Supreme Court has noted that "when established government policy, as expressed or implied by statute, regulations or agency guidelines, allows the Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in public policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267 (emphasis added). The Court in *Gaubert* also explained:

> for a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis

*Id.* at 324–25, 111 S.Ct. 1267.

In addition, the Court in Gaubert explained that "there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception," and further that whether the exception applies does not turn on whether the decision was made at the planning or operational level. Instead, "discretion includes 'all choices or decisions that are based on considerations of public policy.'" *Id.* at 323, 111 S.Ct. 1267 (quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954). The court in *Vaizburd v. United States,* 90 F.Supp.2d 210 (E.D.N.Y.2000), explained:

While there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, ...until the Supreme Court's decision in *Gaubert,* it was less clear whether actions taken on an operational level could ever be discretionary. *Gaubert,* however elucidated the issue by pronouncing the planning-level/operational-level distinction a 'non-existent dichotomy.'

90 F.Supp.2d at 213–14.

■ In the present case, it is clear from the statutory scheme that Congress has left to the discretion of the Marshals Service how to protect federal judges who are threatened. *See* 28 U.S.C. § 566. The statute generally defines the Marshals Service's powers and duties and authorizes the Marshals Service to "provide for the personal protection of Federal jurists." 28 U.S.C. § 566(e)(1)(A). However, the statute does not proscribe the manner in which the Marshals Service should fulfill its protective obligations. *Id.* Also, the applicable federal regulations do not require the Marshals Service to follow any particular approach to the planning or carrying out of its protective assignments. *See* 28 C.F.R. § 0.111(e).

In addition, the Marshals Service's internal policy directives do not mandate how a particular protective assignment should be "planned or conducted". (Guccione Dec. ¶ 5). In addition, the policy directives expressly provide that "security techniques may vary depending on each assignment, and that the design and implementation of a particular protective detail may change over time in response to changing conditions." (Guccione Dec. ¶ 6). Specifically, there are no Marshals Service policies providing specific instructions or mandatory requirements on the activities that are at issue in this suit: such as "the use and placement of barricades, the park-

ing of government vehicles, the assignment or rotation of deputy marshals, the logistics of restricting ingress or egress to a secure site, the positioning Marshals Service personnel, the placement of security cameras, interacting with a protectee's neighbors, or noise limitations." (Guccione Dec. ¶ 7).

Therefore, the first prong of the discretionary function exception is met.

■ The second prong of the discretionary function exception is met here as well because the Marshals Service's decisions regarding how to protect federal judges are based on considerations of public policy. *Gaubert*, 499 U.S. at 323, 111 S.Ct. 1267. Plaintiffs contend that "the Government agents' acts at issue were not grounded in public policy, as they cannot be said to be based on the purposes that the Marshal Service seeks to accomplish." (Pls.' Memo. at 18). This allegation is completely unfounded. The actions and decisions of Marshals Service employees in providing protective services to a threatened federal judge are directly linked to that agency's policy mission of "provid[ing] for the personal protection of Federal jurists." 28 U.S.C. § 566(e)(1)(A).

In fulfilling its mission, the Marshals Service, within the confines of its limited budget, must balance the nature of the threat to a courthouse or judicial officer with the logistical considerations involved in providing the security. In addition, the Marshals Service must consider the effect on the public of closing or restricting public spaces, such as sidewalks, streets, and building entrances, and of erecting security check-points. (Guccione Dec. ¶ 4). These types of decisions are fraught with political, social, and economic underpinnings.

Several Circuit Courts of Appeal have concluded that security related decisions, including decisions involving how much se-

curity to provide and the manner in which to provide it, are the types of public policy judgments that fall within the discretionary function exception. *See, e.g., Macharia v. United States*, 334 F.3d 61, 63–64 (D.C.Cir.2003) (holding that security-related decisions made when protecting an embassy involved social, political, and economic considerations); *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir.1997) (holding that the discretionary function exception applies to the manner in which security was provided to post offices); *Zielinski v. United States*, No. 95–2160, 1996 WL 329492, at *16 (4th Cir. June 6, 1996) (decisions involving the scope of security protection at federal buildings "are grounded in economic, social, and political considerations"); *Bergmann v. United States*, 689 F.2d 789, 793–94 (8th Cir.1982) (Marshals Service's selection of, and manner of supervising, participants in the witness protection program fell within the discretionary function exception); *Fanoele v. United States*, 975 F.Supp. 1394 (D.Kan. 1997) (applying the discretionary function exception to the manner in which Marshals Service secured federal courthouse).

Plaintiffs also allege that because the acts committed by the Marshals Service were tortious, they were neither grounded in public policy or discretionary. Although it is unfortunate that the protection of Judge Mukasey may have interfered with Plaintiffs' lifestyle, that fact alone is not dispositive as to whether the Marshals Services' conduct falls within the discretionary function example. To accept Plaintiffs' argument would be to "conflate an abuse of discretion with an absence of discretion." *Fagot Rodriguez v. The Republic of Costa Rica*, 297 F.3d 1, 10 (1st Cir.2002). An abuse of discretion is expressly covered by the FTCA's discretionary function example. *See* 28 U.S.C. § 2680(a) (providing that the exception ap-

plies "whether or not the discretion involved be abused").

Plaintiffs further allege that, even if the Marshals Service's conduct involved decision-making at the policy level, "it is well-established that the FTCA includes recovery for trespass, and that the discretionary function exception to the FTCA does not apply to such a claim." (Pls.' Opp. Brief at ¶ 22). In fact, Plaintiffs rely on one Fifth Circuit opinion, decided before *Gaubert,* to support to this statement. The court in *Simons v. United States,* 413 F.2d 531 (5th Cir.1969) held that the discretionary function did not apply to a trespass claim since "the Government has no authority or discretion over land not under its control."

Of course, that decision is not binding in this Circuit. Moreover, numerous courts have dismissed trespass claims, brought under the FTCA, as barred by the discretionary function exception. *See, e.g., Thames v. United States,* 350 F.3d 247, 253 n. 4 (1st Cir.2003); *Fagot Rodriguez,* 297 F.3d at 9–10; *Green v. United States,* 629 F.2d 581, 586 (9th Cir.1980); *Green v. United States,* 629 F.2d 581, 586 (9th Cir. 1980); *Farms v. United States,* No. 94–1448, 1995 WL 914615 at *1–3 (S.D.Fla. Mar.3, 1995); *Sauders v. South Carolina Public Service Auth.,* 856 F.Supp. 1066, 1069, 1075 (D.S.C.1994). In *Fagot Rodriguez,* the complaint sought damages for tortious trespass, alleging that government employees had unlawfully used plaintiffs' property to set up a consulate without plaintiff's permission. Plaintiffs argued, as they do in the present case, that the discretionary function exception did not apply because the law did not permit those employees to trespass on or use another's property. The court in *Fagot Rodriguez,* however, rejected this argument, explaining:

> The crux of [plaintiffs'] claim . . . is that the [defendants'] actions were non-discretionary because they were wrongful. That argument conflates an abuse of discretion with an absence of discretion. The discretionary function exception explicitly extends to abuses of discretionary authority. . . . The exercise of discretion could not be abused without negligence or a wrongful act. Indeed, the [plaintiffs'] interpretation reads the discretionary function exception out of the statute entirely. The only case in which the exception can possible apply are those in which a foreign sovereign or one of its agents or employees is accused of wrongful, tortious act. Thus, it a tortious act were, by definition, non-discretionary, the discretionary functions exceptions would be a dead letter.

*Fagot Rodriguez,* 297 F.3d at 10 (internal quotations and citations omitted).

For the aforementioned reasons, the discretionary function exception applies to shield the Government from Plaintiffs' tort claims against the Marshals Service, and the case is dismissed. I need not reach Defendant's other arguments.